## UNITED STATED COURT OF APPEALS
## FOR THE ELEVETH CIRCUIT

_____

CITY OF RIVIERA BEACH,

Appellant-Cross Appellee

vs.

LADI MARCH-GOLDWIRE,

Appellee-Cross Appellant

_____

### APPELLANT-CROSS APPELLEE'S
### MOTION FOR LEAVE TO FILE CORRECTED BRIEF

### CERTIFICATE OF INTERESTED PERSONS AND
### CORPORATE DISCLOSURE STATEMENT

Appellant/Cross-Appellee, City of Riviera Beach, by and through undersigned counsel, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement, pursuant to Rule 26.1, *Fed. R. App. P.*

### Certificate of Interested Persons

Appellant/Cross-Appellee submits this complete list, as known to this filer, of all trial judges, attorneys, persons, associations of persons, films, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly

held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party as follows:

Bleau, Denise J. – Counsel for City of Riviera Beach

Taylor English Duma, LLP – Counsel for City of Riviera Beach

Chattergoon, Ria Nikki – Counsel for Ladi March-Goldwire

City of Riviera Beach – Defendant/Appellant

Cohn, James I. – United States District Court Judge

Dimitrouleas, Hon. William P. – United States District Court Judge

Hazel, Robin Felicity – Counsel for Ladi March-Goldwire

Hazel Law, P.A. – Law Firm for Ladi March-Goldwire

March-Goldwire, Ladi – Plaintiff/Appellee

Matthewman, William – United States Magistrate Judge

Old, Victoria L. – Trial Counsel for City of Riviera Beach

Olds & Stephens, P.A. – Trial Firm for City of Riviera Beach

RC Law Group – Law Firm for Ladi March-Goldwire

Stephens, Don – Trial Counsel for City of Riviera Beach

## Corporate Disclosure Statement

Appellant/Cross-Appelle is a governmental entity that has no parent corporation or subsidiaries, nor any publicly held stock.

## <u>MOTION FOR LEAVE TO FILE CORRECTED BRIEF</u>

The City of Riviera Beach, Appellant/Cross-Appellee, by and through its undersigned counsel, respectfully moves the Court for leave to file a Corrected Reply and Answer Brief in the above-styled matter.  In support of this Motion, Movant would show unto the Court that its initial Reply and Answer Brief was timely filed and served on May 13, 2022.  However, the undersigned counsel recently discovered formatting errors, which, according to Counsel Press, occurred when they converted the brief from Word to PDF for submission to the Court. Specifically, the brief contains extra spacing in the middle of words throughout the brief.  Counsel Press has since provided a Corrected Brief, and by this Motion, Appellant/Cross-Appellee seeks to file a Corrected Brief which does not contain the spacing errors.  The formatting errors do not affect the brief's content.

Respectfully submitted,
**TAYLOR ENGLISH DUMA, LLP**

*/s/ Denise J. Bleau*
Denise J. Bleau, Esquire
Florida Bar No. 599514
dbleau@taylorenglish.com
9314 Forest Hill Blvd, Suite 790
Wellington, FL 33411
Telephone: (561) 765-6717
Facsimile: (770) 434-7376
*Attorneys for City of Riviera Beach*

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This document complies with the type-volume limit of Fed. R. App. P. 28.1 and the word limit of Fed. R. App. P. 32(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 387 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point font and Times New Roman type style.

*/s/ Denise J. Bleau*
**Denise J. Bleau, Esq.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 6, 2022, I filed the foregoing document with the United States Court of Appeals for the Eleventh Circuit Electronic Case Filing System, which will provide a true and correct copy to all counsel of record, including Appellee's counsel at hazellawpa@gmail.com and ria@therclawgroup.com.

*/s/ Denise J. Bleau*
**Denise J. Bleau, Esq.**

**EXHIBIT A**

No. 21-13871

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

LADI MARCH GOLDWIRE,

*Plaintiff/Appellee/Cross-Appellant,*

– v. –

CITY OF RIVIERA BEACH, FLORIDA,

*Defendant/Appellant/Cross-Appellee.*

---

APPEAL FROM FINAL JUDGMENT
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:18-CV-81285-WPD
_____

# (CORRECTED) APPELLANT/CROSS-APPELLEE'S REPLY
# AND RESPONSE BRIEF
_____

Denise J. Bleau, Esq.
TAYLOR ENGLISH DUMA LLP
9314 Forest Hill Blvd., Suite 790
Wellington, Florida 33411
Telephone: (561) 765-6717
Email: dbleau@taylorenglish.com
*Attorneys for Appellant/Cross-Appellee City of
Riviera Beach*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellant, City of Riviera Beach, by and through undersigned counsel, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement, pursuant to Rule 26.1, *Fed. R. App. P.*

### <u>Certificate of Interested Persons</u>

Appellant submits this complete list, as known to this filer, of all trial judges, attorneys, persons, associations of persons, films, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party as follows:

Bleau, Denise J. – Counsel for City of Riviera Beach

Chattergoon, Ria Nikki – Counsel for Ladi March-Goldwire

City of Riviera Beach – Defendant/Appellant

Cohn, James I. – United States District Court Judge

Dimitrouleas, Hon. William P. – United States District Court Judge

Hazel, Robin Felicity – Counsel for Ladi March-Goldwire

Hazel Law, P.A. – Law Firm for Ladi March-Goldwire

March-Goldwire, Ladi – Plaintiff/Appellee

Matthewman, William – United States Magistrate Judge

Old, Victoria L. – Trial Counsel for City of Riviera Beach

Olds & Stephens, P.A. – Trial Firm for City of Riviera Beach

RC Law Group – Law Firm for Ladi March-Goldwire

Stephens, Don – Trial Counsel for City of Riviera Beach

### Corporate Disclosure Statement

Appellant is a governmental entity that has no parent corporation or subsidiaries, nor any publicly held stock.

Respectfully submitted,
**TAYLOR ENGLISH DUMA, LLP**

*/s/ Denise J. Bleau*
Denise J. Bleau, Esquire
Florida Bar No. 599514
dbleau@taylorenglish.com
9314 Forest Hill Blvd, Suite 790
Wellington, FL 33411
Telephone: (561) 765-6717
Facsimile: (770) 434-7376
*Attorneys for City of Riviera Beach*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

I.     STATEMENT OF FACTS .............................................................1

II.    STANDARD OF REVIEW ...........................................................3

REPLY IN SUPPORT OF PRINCIPLE APPEAL ...................................5

III.   SUMMARY OF THE ARGUMENT .........................................5

IV.   ARGUMENT.................................................................................6

     A.    Goldwire has not identified any evidence in the record
          to support her retaliation claim...........................................6

     B.    Goldwire has not identified any evidence in the record
          to support the jury's award of damages ...........................12

CROSS-APPELLEE'S ANSWER BRIEF ................................................14

     1.    There is Evidence in the Record Supporting the Jury's
          Verdict Finding in Favor of the City on Goldwire's
          Equal Pay Act Claim .........................................................15

     2.    There is Evidence in the Record Supporting the Jury's
          Verdict Finding in Favor of the City on Goldwire's
          Whistleblower Claim...........................................................19

V.    CONCLUSION..............................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Brady v. Fort Bend Cty.*,
145 F.3d 691 (5th Cir. 1998) ..............................................................14

*Calhoun v. Walmart Stores E., LP*,
818 F. App'x 899 (11th Cir. 2020)........................................ 4, 14, 23

*Clark County Sch. Dist. v. Breeden*,
532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) ..................10

*Damon v. Fleming Supermarkets of Florida, Inc.*,
196 F.3d 1354 (11th Cir. 1999) ..........................................................22

*Drago v. Jenne*,
453 F.3d 1301 (11th Cir. 2006) ..........................................................11

*Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v.*
*Shutters Condo. Ass'n*,
389 F. App'x 952 (11th Cir. 2010)........................................................5

*Farley v. Nationwide Mut. Ins. Co.*,
197 F.3d 1322 (11th Cir. 1999) ..........................................................11

*Gonzalez v. Butts Cty.*,
5:10-CV-164 (MTT), 2012 U.S. Dist. LEXIS 136362
(M.D. Ga. Sep. 24, 2012) ...............................................................7-8

*Hoover, Inc. v. McCullough Indus., Inc.*,
380 F.2d 798 (5th Cir. 1967) ................................................................5

*Little v. Bankers Life & Cas. Co.*,
426 F.2d 509 (5th Cir. 1970) ................................................................5

*McCann v. Tillman*,
526 F.3d 1370 (11th Cir. 2008) ..........................................................10

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
817 F.3d 1241 (11th Cir. 2016) ............................................................4

*Patterson v. P.H.P. Healthcare Corp.*,
90 F.3d 927 (5th Cir. 1996) ................................................................14

ii

*Rosenfield v. Wellington Leisure Prods., Inc.*,
    827 F.2d 1493 (11th Cir. 1987) ........................................................................23

*Salinas v. O'Neill*,
    286 F.3d 827 (5th Cir. 2002) ..............................................................................12

*Sims' Crane Serv., Inc. v. Ideal Steel Prods.*,
    800 F.2d 1553 (11th Cir. 1986) ...................................................................... 4, 23

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) ..................................................................... 10, 11

*United States v. Smith*,
    918 F.2d 1551 (11th Cir. 1990) ...........................................................................8

*Univ. of Tx. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) .....................................12

*Webb-Edwards v. Orange County Sheriff's Office*,
    525 F.3d 1013 (11th Cir. 2008) .........................................................................11

*Wilson v. Attaway*,
    757 F.2d 1227 (11th Cir. 1985) .........................................................................14

**Statutes and Other Authorities:**

Fed. R. Civ. P. 50(a) ................................................................................... 4, 14, 17

Fed. R. Civ. P. 50(a)(2) ...........................................................................................4

Fed. R. Civ. P. 50(b) ....................................................................................... 4, 5, 15

## I.    STATEMENT OF FACTS

Goldwire's Statement of Facts contains certain statements which are not relevant to any of the issues on appeal or are inaccurate representations of the record. To the extent necessary, these will be noted.  For example, Goldwire alleges under the heading "Retaliation" that when Goldwire was hired, "the Building Official's office was relocated to a small office in the corner." [Answer/Cross, page 4] The record citation does not support the statement that the smaller office was "in the corner."   More importantly, Goldwire never alleged her office was moved as a retaliatory measure.  (Goldwire's internal complaint came later.)  Goldwire alleged she was given a smaller office because of her gender.   The jury disagreed.  The jury's verdict against Goldwire on her gender discrimination claim has not been challenged on appeal.[1]

Also under the heading "Retaliation" in her Answer/Cross, Goldwire references an investigation into her status as building official by the State Attorney's office.  [Answer/Cross, page 9] Again, these alleged facts have nothing to do with the jury's finding that the City retaliated against Goldwire by posting her personnel file on Facebook.  In fact, Goldwire fails to identify *any facts* in her Statement of

---

[1]    In her Answer brief, Goldwire states "According to Spradley, Bailey's comment about putting Goldwire in her place was consistent with his behavior towards women…" (Answer/Cross, Page 4) This statement also is not supported in the record.

Facts which could reasonably support the jury's verdict. Goldwire does not identify any facts which would support the jury's finding that the City released her personal information in retaliation for her internal complaint.

In response to the City's challenge regarding the lack of evidence to support the jury's award of damages, Goldwire references *a portion* of her testimony regarding her feeling that she was being "cyberstalked" and "physically being stalked," referencing D.E. 158 at page 114. [*See*, Answer/Cross, page 8] However, Goldwire's testimony regarding this subject begins on page 113 when she is asked about "being run out of the City." Goldwire references videos sent to her phone and white vans in the parking lot, and letters she received telling her that she needed to go. [D.E. 158 at pp. 113-114] These are the examples given by Goldwire of being "cyberstalked" and "physically being stalked." They appear to have nothing to do with the alleged posting of her personnel file on Facebook. The dispute Goldwire had with the Cold Storage developers received a lot of publicity, as did Goldwire's posting on social media about them being "white developers." [D.E. 158, pp. 56-57]

On page 8 of her Answer/Cross, Goldwire states that she "...testified that she had to purchase a home and move out of the City of Riviera Beach, where she was born and raised, in order to feel safe" citing D.E. 158, pages 114-115. But Goldwire did not testify that she moved out of the City "in order to feel safe." [*See*, D.E. 158,

pp. 114-115] Furthermore, Goldwire did not testify that her issues living in the City had anything to do with the Facebook posting. Indeed, Goldwire testified: "You make a decision; you stick with it. You interpret the code; you enforce it. You be fair. I tried to do all of that. But in doing that, I was pursued and I was feeling some type of way, and I… I purchased a home somewhere I didn't want to be." [D.E. 158, p. 114] There is no evidence in the records suggesting that the videos, letters and white vans allegedly causing Goldwire to move out of the City, had anything to do with the release of Goldwire's personnel file.

Finally, under the heading "Equal Pay" Goldwire states she was hired at a base salary of $75,839.00 per year and that during her tenure with the City she received only one 3 percent raise increasing her base salary to $78,114.56. [Answer/Cross, pages 9-10] However, Randy Sherman testified that Goldwire also received a 5% raise in 2018, and as of October 5, 2018, Goldwire's salary was $82,031.04. [D.E. 160, pp. 118-121]

## II.    STANDARD OF REVIEW

Goldwire accurately describes the standard of review regarding the City's appeal. "The well-established law in this circuit is that any party seeking to review the sufficiency of the evidence supporting a jury's verdict must first move for a directed verdict. Failure to do so means that the only consideration on appeal is

3

whether there is any evidence in the record supporting the jury's verdict." [Answer/Cross, page 19; *see also*, page 17]

Goldwire does not accurately describe the standard of review regarding her cross-appeal. [Answer/Cross, page 28] Goldwire failed to make a Rule 50(a) motion before submission of the case to the jury. The standard of review on the City's appeal and Goldwire's cross appeal are the same.

Under Federal Rule of Civil Procedure 50(a), a motion for judgment as a matter of law must be made "before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The motion may be *renewed* after trial. *See* Fed. R. Civ. P. 50(b). "If a party fails to assert a Rule 50(a) motion before the case is submitted to the jury, 'a subsequent motion for jnov [*sic*] can be granted only if plain error can be proven.'" *Calhoun v. Walmart Stores E., LP*, 818 F. App'x 899, 905 (11th Cir. 2020) citing *McGinnis v. Am. Home Mortg. Servicing, Inc.,* 817 F.3d 1241, 1260 n.13 (11th Cir. 2016). In such a case, on appeal "[this Court's] inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a manifest miscarriage of justice." *Calhoun, supra*, citing S*ims' Crane Serv., Inc. v. Ideal Steel Prods*., 800 F.2d 1553, 1557 (11th Cir. 1986) (*citation and internal quotation marks omitted*). The Court "may not examine the sufficiency of the evidence supporting a jury verdict in the absence of a timely motion for judgment as a matter of law." *Fair*

*Hous. Ctr. of the Greater Palm Beaches, Inc. v. Shutters Condo. Ass'n*, 389 F. App'x 952, 955 (11th Cir. 2010).

"[I]n the absence of a Fed. R. Civ. P. 50(b) motion in the lower court; where a jury verdict is entirely without evidentiary basis, a court of appeals may set that verdict aside. *Hoover, Inc. v. McCullough Indus., Inc*., 380 F.2d 798, 801 (5th Cir. 1967). *See, also, Little v. Bankers Life & Cas. Co*., 426 F.2d 509, 511 (5th Cir. 1970).

## <u>REPLY IN SUPPORT OF PRINCIPLE APPEAL</u>

### III. SUMMARY OF THE ARGUMENT

On appeal, the City does not seek to challenge the *sufficiency* of the jury's verdict that the City retaliated against Goldwire for filing an internal "hostile workplace" complaint by releasing her unredacted personnel file on Facebook. It is the *complete absence* of evidence of unlawful retaliation by the City that forms the basis of the City's appeal.

Although Goldwire testified that her unredacted personnel file was posted (by someone) on the "Singer Island Facebook Group's" Facebook page, there is no evidence that the City played any role in releasing the file or posting the file. Most importantly, there is no evidence the City released and/or posted Goldwire's personnel file in retaliation for her internal complaints. Indeed, challenged in this

appeal to identify any such evidence, Goldwire has been unable to do so. Without any evidence to support the jury's verdict, the verdict must be reversed.

Similarly, when challenged to identify evidence in the record supporting the jury's award of damages to Goldwire, she was unable to do so. Goldwire has not identified any evidence in the record of a causal link between Goldwire's alleged distress or mental anguish and the release of her personnel file. Goldwire has not identified any evidence supporting the jury's $60,000 award.

## IV.  ARGUMENT

### A. Goldwire has not identified any evidence in the record to support her retaliation claim.

In an effort to refute the City's contention that there is no evidence in the record to support Goldwire's claim that the City released her personnel file and that such release was in retaliation against Goldwire for raising an internal complaint, Goldwire has misstated the evidence in the record and has failed to identify any competent evidence supporting her claim.

At some undetermined amount of time after her internal complaint, Goldwire states that Cold Storage, a developer she was having issues with, made a public records request for her personnel file. [D.E. 157, pp 82-83] According to Goldwire, her personnel file was later "released" on Facebook. [D.E. 157, pp 82-83]

In response to the City's appeal, Goldwire says she saw the unredacted file on Facebook "and notified the City of this in an email." [Answer/Cross, page 21] There

is no record citation to this statement and it is contrary to the evidence in the record. The only email Goldwire referred to in her testimony at trial with respect to the City and her personnel file is Plaintiff's Exhibit 7, which in no way informs the City that the file was released or that the file was posted. [D.E. 157, 84:21-26 & Plaintiff's Trial Exhibit 7] Moreover, the referenced email was dated February 1, 2018 and was sent more than ten months after Goldwire's internal hostile workplace complaint.[2] [D.E. 157, p.84-5; Plaintiff's Trial Exhibit 7]

Goldwire asserts that the City's witnesses did not deny releasing the file – they only denied being aware that the file had been released. [Answer/Cross, page 21] This is not evidence supporting her retaliation claim. Goldwire cannot identify one instance where a witness was asked if they had released the file and the witness failed to deny their involvement or gave an evasive response. The City's employees denied being aware that the file had been released. It is not possible to be unaware the file was released, but somehow be involved in the release of the file. Moreover, lack of evidence in the record is not evidence and is certainly not evidence of *retaliation. See, e.g. Gonzalez v. Butts Cty.*, No. 5:10-CV-164 (MTT), 2012 U.S.

_____

[2]     The email referenced by Goldwire - Plaintiff's Trial Exhibit 7 – does not actually mention anything about a Facebook posting. In the email, Goldwire inquired about her personnel file, and she requested confirmation that the information in the file is confidential. [Plaintiff's Trial Exhibit 7] Thus, Ms. Young was correct when she testified that she did not receive any complaint from Goldwire related to the release of her personnel file. [D.E. 158, p. 158]

Dist. LEXIS 136362, at *44 (M.D. Ga. Sep. 24, 2012) (Absence of evidence is not proof of falsity.)

Goldwire appears to argue that because Ms. Young and other City employees denied having any knowledge about the released file, the Court should treat these denials as admissions because of statements made by the City's Counsel during opening statements. [Answer/Cross, pp. 21-22] It is axiomatic that "opening and closing statements and arguments of counsel are not evidence." *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) (internal citations omitted). Because Counsel's comments are not evidence, they cannot be used in the manner sought by Goldwire in order to support her retaliation claim.

Furthermore, contrary to Goldwire's submission, it is clear from the context of Counsel's statements that he was not telling the jury that the witnesses the City was going to call on its behalf would lie and claim they were unaware. After referring to Goldwire's claims as a "travesty" [D.E. 169, p. 11], Counsel stated:

> After you view this evidence and you look at what happened, you'll see, you'll see. It's not about sex, gender. It's not about black, white, male, any of that stuff. It was, actually, about corruption, manipulation of the system. And the people of Riviera Beach, they deserve better than that. They deserve better.
>
> So, yeah, the dirty stuff is going to come out. And so when you see a witness, just because they say they work for the City of Riviera Beach, don't expect me to let them off the hook. What you need to expect is I'm going to ask them and push them to tell you the truth. But some of them can't in their minds. And that's what the evidence is going to show that they play off of, because nobody wants to admit: I did this. I did that. It's just -- it will turn out to be: I don't

remember. Well, did you check that? I don't remember. Did you say that to this person? I don't know. I can't recall.

[D.E. 169, p. 12]

Goldwire has grossly misconstrued Counsel's comments in her Answer/Cross.

Goldwire appears to acknowledge that she cannot identify one affirmative fact to support her retaliation claim when she states:

> Goldwire's testimony about seeing the file on Facebook, when combined with the lack of a denial from any of the City's witnesses and their vague answers about not knowing or remembering if the file was posted, was sufficient evidence from which the jury could infer that the City was responsible for the release of the personnel file over which it had exclusive possession, custody, and control.

[Answer/Cross, page 23]

Denials by the City coupled with a total lack of affirmative evidence introduced by Goldwire does not equal affirmative evidence in Goldwire's favor. "Lack of denials" because the question was never posed is certainly not evidence either. Even assuming the jury could reasonably infer that the file came from the City, this is a far cry from proving that some unidentified person in the City knowingly released the file in retaliation for Goldwire's internal complaints, or arranged to have the file posted on social media in retaliation for Goldwire's internal complaints.

Goldwire contends that the date of her February 2018 email to the City is "by no means indicative of the date on which the file was released." [Answer/Cross, page 24] That may or may not be true. But the February 2018 email is the only evidence in the record that provides any temporal information regarding the release (assuming Goldwire's testimony is accepted that she sent this email after she saw her file posted online.)

A causal connection can be established by the close temporal proximity between the protected activity and the adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "The causal connection prong requires a plaintiff to show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (quotation and alterations omitted). Goldwire has the burden of proof.

The February 2018 email was sent ten months after Goldwire's internal complaint to the City. The Supreme Court has noted that cases in which plaintiffs have attempted to establish causation through the temporal proximity "hold that the temporal proximity must be 'very close[.]'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). This Court has stated that a "three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Thomas*, *supra* 506 F.3d at 1364; *Drago*

*v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that three months between a protected activity and an adverse employment action standing alone was insufficient to establish a causal connection of retaliatory discharge); *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1029 (11th Cir. 2008) (holding that an almost six-month gap between a complaint and a failure to transfer was insufficient to establish a causal connection). A seven-week gap has been held to be sufficiently close to establish a causal connection. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (ADA case).

The record below is completely devoid of any evidence the City released Goldwire's personnel file in retaliation for her internal complaints. Further, Goldwire did not offer any evidence to show that the City's decision-makers were aware of her EEOC complaint and that this protected activity and the release of the personnel file were not wholly unrelated. *See Thomas, supra* at 1364. The best Goldwire has done is to try to identify "evidence" through the absence of evidence. (*See*, Answer/Cross) This is insufficient.

In an effort to identify evidence of a temporal proximity between the posting of the Facebook file and the protected activity, Goldwire notes that Mr. Evans was copied on emails involving Goldwire's dispute with Cold Storage and that these emails would have occurred prior to September 2017. [Answer/Cross, page 24] She then states, without any record support or citation to the record, "Thus, the release

of the personnel file occurred in 2017, not 2018 and was related to her protected activity of making a hostile work environment complaint." *Id.* There is simply no evidence of this. According to Goldwire's testimony, she learned that the Cold Storage developers had made public records requests for her personnel file. [D.E. 157, p. 82, lines 22-25] At some point she saw her personal information posted on Facebook. [D.E. 157, p. 83, line 19 - p. 84, line 17] This is the extent of "evidence" in the record regarding Goldwire's retaliation claim. There is no evidence to support Goldwire's statement in her Answer/Cross that her file was released within weeks of her internal complaint or that the release was "related to her protected activity of making a hostile work environment complaint" as alleged. [Answer/Cross, page 24] These unsubstantiated assertions must be disregarded.

Goldwire can point to no evidence in the record to show that "her protected activity was a but for cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). The jury's verdict in favor of Goldwire on this issue should be reversed.

### B. Goldwire has not identified any evidence in the record to support the jury's award of damages.

Any award for emotional injury greater than nominal damages "must be supported by evidence of the character and severity of the injury to the plaintiff's emotional well-being." *Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002). In her

Answer/Cross, Goldwire failed to identify any record evidence suggesting Goldwire suffered damage as a result of the alleged release of her personnel file.

As noted above, while Goldwire testified about receiving videos on her phone and letters telling her it was time to leave the City, and she testified about seeing white vans in the parking lot, none of this was alleged to be connected to the release of Goldwire's personnel file. [D.E. 158, pp. 113-114] The dispute Goldwire had with the Cold Storage developers received a lot of publicity, as did Goldwire's posting on social media about them being "white developers." [D.E. 158, pp. 56-57]

Contrary to her contention in her Answer/Cross, at trial, Goldwire made it clear that she felt she had to move out of the City because of the negative publicity and negative reaction to her attempt to enforce the code with respect to Cold Storage. Goldwire testified: "You make a decision; you stick with it. You interpret the code; you enforce it. You be fair. I tried to do all of that. But in doing that, I was pursued and I was feeling some type of way, and I… I purchased a home somewhere I didn't want to be." [D.E. 158, p. 114] There is no evidence in the records suggesting that the videos, letters and white vans allegedly causing Goldwire to move out of the City, had anything to do with the release of Goldwire's personnel file, and her direct testimony set forth above makes it clear that Goldwire believed the problems arose because of her dispute with Cold Storage.

A "failure to establish 'actual injury' without sufficient evidence will result in the award of only nominal damages." *Brady v. Fort Bend Cty.*, 145 F.3d 691, 718 (5th Cir. 1998). Furthermore, "'hurt feelings, anger and frustration are a part of life,' and [are] not the types of harm that could support a mental anguish award." *Id.* quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996)).

Goldwire did not introduce any evidence, testimonial or otherwise, articulating the character or severity of her purported distress or mental anguish arising out of the alleged retaliatory release of her personnel file by the City. Thus, the jury's verdict and the lower Court's judgment awarding $60,000 to Goldwire in emotional distress and mental anguish damages was in error and should be reversed.

## CROSS-APPELLEE'S ANSWER BRIEF

In her Cross-Appeal, Goldwire challenges the jury's finding in favor of the City on her Equal Pay Act and Whistleblower claims. Because Goldwire did not assert a Rule 50(a) motion before the case was submitted to the jury, this Court's inquiry regarding those two claims "is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a manifest miscarriage of justice." *Calhoun v. Walmart Stores E., LP,* 818 F. App'x 899, 905 (11th Cir. 2020). *See also, Wilson v. Attaway*, 757 F.2d 1227, 1237 n.3 (11th Cir. 1985) (review is limited to whether there is an absolute absence of evidence to support the jury's verdict).

Because Goldwire cannot show that the jury's verdict in favor of the City on her claim under the Equal Pay Act and for violation of the Florida Whistleblower Act was unsupported by any evidence in the record, her appeal must be denied.

The evidence of fringe benefits afforded to Goldwire which were not provided to other building officials is evidence that Goldwire was not paid less than her male counterparts. Similarly, testimony from Mr. Gagnon that he terminated Goldwire because he believed she lied to him is evidence that Goldwire was not retaliated against in violation of the Whistleblower's Act.

### 1. There is Evidence in the Record Supporting the Jury's Verdict Finding in Favor of the City on Goldwire's Equal Pay Act Claim

Goldwire complains that even though the jury found she performed the same job as male counterparts, and even though her base salary was lower than those male counterparts, the jury found that Goldwire was not paid less than her predecessor and successor male Building Officials. [*See*, Initial Brief On Cross-Appeal (hereinafter Answer/Cross), page 29]

The jury was instructed that they should consider all forms of compensation including wages, salary, profit sharing, expense accounts, monthly minimums, bonuses, uniform-cleaning allowances, hotel accommodations, use of a company car, gasoline allowances, and fringe benefits. [*See*, D.E. 180, p. 5 and D.E. 149, p. 17.] As stated by the District Court in its order denying Goldwire's Rule 50(b) motion, in finding Goldwire was not paid less, "[t]he jury may have found that

Plaintiff failed to meet her burden of showing that she was paid a lower wage than her predecessors because of evidence that she was provided with a company car and fringe benefits." [D.E. 180, p. 5]

Goldwire had a take-home vehicle which her alleged comparators did not have. Goldwire challenges this strong evidence by asserting, "Paying for use of the take-home vehicle disqualified that vehicle from being used to justify the pay disparity between Goldwire's salary and the salary of the other male Building Officials." (Answer/Cross, page 34) However, there is no record citation for this statement and there is nothing in the record to support Goldwire's claim that she "paid for the use of a take-home vehicle" as alleged.

At trial, Goldwire testified that she was required to pay taxes in association with her receiving a take-home vehicle. [D.E. 157, p. 69] She stated, "So in municipal government they have ….personal use of a company car. When you use it, you should be taxed on it. It's a fringe benefit, so to speak, and so I was taxed based on that." *Id*. In other words, because the take-home vehicle is a valuable benefit provided to certain employees, the value of this additional benefit must legally be included in the calculation of the employee's total compensation package.

In her brief, Goldwire appears to imply that the amount of the tax was equivalent to the value of the benefit, but there is no record evidence to support this claim, and it is, quite frankly, non-sensical. Indeed, at trial Goldwire testified that

she was "more than happy" to pay the tax in order to get the take-home vehicle. [D.E. 157, p. 68]  (*See* also D.E. 158, p.71 where Goldwire testifies about being "taxed on the vehicles as a fringe benefit.")

The addition of the value of having a take-home vehicle included in Goldwire's compensation package is enough to sustain the jury's finding that Goldwire had not demonstrated she was paid less than her male counterparts. Goldwire received benefits her male counterparts did not receive.  [D.E. 161, pp. 21-22].

Because Goldwire did not make a Rule 50(a) motion, review is limited to whether there was *any* evidence to support the jury's verdict.  While sufficiency of evidence is not the standard, there is in fact sufficient evidence in the record to support the jury's verdict on Goldwire's Equal Pay Act claim.

In addition to the take-home vehicle, Goldwire was provided the fringe benefit of working under a third party Building Official ("CAP Government") at the City's expense, because she did not possess a standard license at the time of hire, and the City paid for Goldwire to take tests when she was attempting to get her Standard License – which included payment for hotels.  [D.E. 157, pp. 43-45, D.E. 160, pp. 121-122].  These additional benefits are unique to Goldwire.  There is no evidence in the record demonstrating that Goldwire's male counterparts received these same

benefits. (While the City paid for other building officials to attend seminars, Goldwire was the only one also paid to become qualified as a building official.)

The City's Finance Director testified that Goldwire's salary was $82,031.04 as of October 5, 2018, which is significantly more than alleged by Goldwire in her Answer/Cross. [Answer/Cross, page 9-10; D.E. 160, pp. 118-121]. (The Pay Chart published to the jury and reproduced in Goldwire's Answer/Cross (page 33) listing Goldwire's salary in April of 2019 as $78,114.56 is inaccurate.) Goldwire contends, "there is no contrary evidence in the record from which the jury could conclude that Goldwire was paid the same *base salary* as the male Building Officials." [Answer/Cross, page 34] (emphasis added) This is a red herring. There is no dispute regarding Goldwire's base salary. However, as the jury was instructed (without objection from Goldwire) "to determine [whether Goldwire was paid less than her male counterparts], you should consider all forms of compensation including wages, salary, profit sharing, expense accounts, monthly minimums, bonuses, uniform-cleaning allowances, hotel accommodations, use of a company car, gasoline allowances, and fringe benefits." [D.E. 149, p. 17]

If the jury accepted as true City's Finance Director's testimony regarding Goldwire's actual salary, and considered the benefits uniquely provided to Goldwire, the jury reasonably may have concluded that Goldwire was not paid less than her male counterparts. At a minimum, the jury could have reasonably concluded that

Goldwire failed to carry her burden to prove she was paid a lower wage than her predecessors.  The jury's verdict must be sustained.

## 2. There is Evidence in the Record Supporting the Jury's Verdict Finding in Favor of the City on Goldwire's Whistleblower Claim

Most of the "facts" alleged by Goldwire on appeal regarding her Whistleblower claim as set forth on page 30 and on pages 37 through 39 in her Answer/Cross are unsupported by citations to the record and are unsupported by the record or reflect only Goldwire's version of events.  Goldwire ignores and/or mischaracterizes the City's evidence in the record which the jury could have reasonably accepted as a basis for denying Goldwire's Whistleblower claim.  The most relevant evidence omitted by Goldwire is addressed below.

First, Goldwire asserts as pretext, Gagnon's claim that he recommended her termination because he believed she lied to him regarding the status of the fence permit.  In support of her assertion, Goldwire says she told Gagnon that she was unsure whether the permit was issued.  (Answer/Cross, page 38 "she told Gagnon she was unsure whether the permit had been issued" and "when Gagnon asked Goldwire whether the permit had been issued and she said she did not know.") However, Goldwire acknowledges in her Statement of Facts, that Gagnon testified that "Goldwire lied to him on April 26 when she told him that she did not issue the permit when she had, and that was the reason for her termination."  *See*,

Answer/Cross, page 13 citing to D.E. 159, p. 134 in the record wherein Gagnon testified:

> . . . me following up and asking Ms. March[-Goldwire] when she arrived to the site whether or not a permit had been issued, and her response to me, again, was that a permit had been applied for but it hadn't been issued yet and that I wouldn't have any issue or concerns with it.

Indeed, Gagnon had earlier testified that he had asked Goldwire "whether or not a permit has been issued for the site" and that Goldwire responded saying "that a permit was submitted but it hadn't been issued yet." [D.E. 159, p. 112] Gagnon said he then asked to see the submittal when they got to the office because he wanted to see what was being applied for. [D.E. 159, p. 112]

Gagnon later testified again regarding his conversation with Goldwire:

> My response to that was: As soon as we go back to the office, I want to see what was applied for. I want to make sure that, you know, give myself the opportunity to look and see to make sure that there's no zoning issues or comprehensive plan issues, and that was really the last time we had a conversation about it.

> We went back to the office. I think I sent a follow-up e-mail to Ms. March because she didn't provide the application the following day…However, I did additional investigation, and it turned up that a permit had been issued, and she didn't tell me a permit was issued. In my opinion, she lied directly to me about the status of the permit.

[D.E. 159, pp. 134-135]

Gagnon also testified, "…to have Ms. March not just tell me that she issued it and say we received it and you won't have an issue with it, and then when I asked to

follow up on it and she just doesn't respond to it, I felt as if I couldn't trust her anymore." [D.E. 159, p. 136]   Gagnon explained his reason for recommending termination of Goldwire as follows:

> I felt as if I could no longer trust her. I felt she lied to me right to my face. She didn't -- even after the fact, you know, there was time that afternoon or the next day that she could have provided new information or followed up and said: You know, I double-checked, and I misspoke before. It actually had been issued, and maybe we'd be having a completely different conversation right now.

[D.E. 159, p. 156]

Furthermore, Dierdre Jacobs, interim city manager, testified that Gagnon recommended terminating Goldwire's employment because, "Whenever he asked her specific questions about issuing the permits, that she had lied about it."  (D.E. 159, p.45][3]

On appeal, Goldwire asserts that Gagnon's explanation is clearly pretext because, "Goldwire's decision to approve the permits was not a surprise to Gagnon."

---

[3]     In her "Summary of Argument" Goldwire also asserts that Gagnon voided permits "even though he knew he did not have the authority to do so." [Answer/Cross, page 30] There is no record citation for this assertion, and it is directly contradicted by Gagnon's testimony that he consulted with one of the City's outside attorneys who advised that he did have the authority to void a permit. [e.g. D.E. 159, p. 155] Goldwire also alleges Gagnon "tried to void the permits." Again, without record citation.  Gagnon testified that he did void the permit and that he believed he had the authority to do so.  [D.E. 159, page 109, lines 19-23] Goldwire does not reiterate these claims in her argument on appeal nor does she suggest this evidence, even if true, would undercut the jury's verdict in favor of the City on Goldwire's Whistleblower claim.

[Answer/Cross, page 38] Goldwire was not terminated for issuing the permit. She was terminated because after she had issued the permit, she told Gagnon that the permit had not been issued. [D.E. 159, pp. 134, 135, 136, and 156]

At trial and on appeal, Goldwire tries to defend her answer by splitting hairs regarding when a permit is issued. Goldwire asserts that even though she had *approved* the issuance of the permit, it was technically not *issued* until the permit was printed. [*See*, *e.g.* Answer/Cross, page 38] However, Gagnon testified that his understanding of issuance is "the green light for the development team to pursue whatever was requested in the building permit application." [D.E. 159, p. 167] He further testified, "So there is an issued by line on that permit routing sheet itself. So, I guess, technically you could say that that is the point in time that it's issued, and then building permit staff proceeds with inputting information into the computer system to see it through for, you know, final issuance based on the computer system." [D.E. 159 p. 167] Even if Gagnon were mistaken, an honest yet mistaken belief in the nondiscriminatory reason for termination offered by defendant will provide sufficient basis for that termination even if the reason offered is foolish, trivial, or outright baseless. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999).

Clearly, there is substantial evidence in the record to support the jury's verdict finding in favor of the City on Goldwire's Whistleblower claim. Goldwire did not

move for judgment as a matter of law before the case was submitted to the jury. Thus, this Court's review is only for plain error. *Calhoun v. Walmart Stores E., LP*, 818 F. App'x 899, 906 (11th Cir. 2020); *See also, Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc*., 800 F.2d 1553, 1557 (11th Cir. 1986).  The District Court did not plainly err in denying Goldwire's motion for judgment as a matter of law. The jury's verdict was supported by evidence, including Gagnon's testimony regarding the reasons he recommended Goldwire's termination.

Furthermore, the District Court did not abuse its discretion in denying Goldwire's motion for a new trial, as the jury's verdict was not against the great weight of the evidence. The jury was free to credit the testimony of Gagnon over Goldwire's account. *See Calhoun v. Walmart Stores E., LP*, 818 F. App'x 899, 906 (11th Cir. 2020) citing generally to *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987) (explaining that the jury is "called upon to make credibility determinations and to weigh the evidence" and is "free to believe or disbelieve portions of testimony").

## V.    CONCLUSION

For the foregoing reasons, the lower court's rejection of Goldwire's plea for judgment as a matter of law or new trial on her Equal Pay Act and Whistleblower claims should be affirmed, and the lower court's judgment in favor of Goldwire on

her claim for Title VII retaliation should be reversed and judgment on that issue should be entered in favor of the City of Riviera Beach.

**Dated** this 13th day of May, 2022

                                  **Respectfully Submitted,**

                                  Taylor English Duma, LLP
                                  *Attorneys for Defendant*
                                  9314 Forest Hill Blvd., Suite 790
                                  Wellington, Florida 33411
                                  Telephone: 561.765-6717
                                  Fax: 770.434-4376
                                  dbleau@taylorenglish.com

                                  By: */s/ Denise J. Bleau*
                                      Denise J. Bleau, Esquire

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 13, 2022, I caused the foregoing document to be filed with the United States Court of Appeals for the Eleventh Circuit Electronic Case Filing System, which will provide a true and correct copy to all counsel of record, including Appellee's counsel at hazellawpa@gmail.com and ria@therclawgroup.com.

*/s/ Denise J. Bleau*
Denise J. Bleau, Esq.

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

This document complies with the type-volume limit of Fed. R. App. P. 28.1 and the word limit of Fed. R. App. P. 32(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,922 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point font and Times New Roman type style.

*/s/ Denise J. Bleau*
Denise J. Bleau, Esq.